Hawkins, J.,
delivered the opinion of the Court.
The material facts disclosed by the record in this cause are, briefly, these: On the 20th of September, 1860, one E. A. Holland, the daughter of the defendant, loaned to one W. H. Johnson seven hundred dollars in gold, in consideration of which, Johnson, as principal, and complainants as sureties, executed a note payable to the said E. A. Holland, due one day after date, and bearing interest at the rate of ten per cent, per annum; afterwards, on the 1st day of January, 1861, the said E. A. Holland indorsed and delivered said note to the defendant. About this time, Johnson, the principal, became insolvent, and has been so ever since; subsequently, the complainants became uneasy, in consequence of their liability, and urged Johnson to pay the money and release them.. Thereupon, Johnson procured the money from his son-in-law, Garrett, with whom he was in partnership in farming and making whisky, and on the 14th day of January, 1864, went to the house of the defendant and tendered to him the full amount of the note, including principal and interest, in legal tender Treasury Notes of the United States, which *610 was refused by tbe defendant, alone upon the ground, the money tendered was not gold and silver. Johnson told him, at the same time, that he was in failing circumstances, and wanted to pay the money, take up the (his) note and release his sureties, and if he (Ivey) did not take the money, he might consider the sureties released. Ivey said he would take no money on the note but gold and silver. Afterwards, about the first of August, 1864, the complainants still being uneasy, and anxious to be released, appealed to Garrett, the son-in-law of W. H. Johnson, to make some arrangement to pay said note, who agreed with them and W. H. Johnson, that he would get the money and pay the debt; and thereupon told complainant, Taylor, to tell the parties who had the note, to bring it up to his house and he would pay it all off, if they would take it; and if not, he would pay the interest which had accrued on it; and soon thereafter, Mrs. Binckley, formerly, Mrs. E. A. Holland, to whom the note was made payable, took the note to Garrett, when he tendered her the full amount due upon the note, including both principal and interest, in legal tender United States Treasury notes, in pursuance of the agreement between himself, the complainants and W. H. Johnson. He told her that Johnson, the principal debtor, had nothing, and that he tendered her the money in order to release the complainants from their liability. Mrs. Binckley, who then claimed the note as her own, but who was most probably . acting as the agent of her father, refused to receive any kind of money except gold and silver, in payment of any part of the princi *611 pal of the note; but consented to receive payment of the interest which had accrued, in the kind of money tendered, and thereupon Garrett paid her $280, which was placed as a credit on the note.
Some several months thereafter, Mrs. Binckley again presented the note to Garrett for the payment of more interest, when he again offered to pay her the whole amount due on the note in United States Treasury notes, which she again refused, upon the ground that the money tendered was not gold and silver. And thus matters stood, until about the 10th of September, 1866, when the defendant instituted suit in the Circuit Court of Robertson County upon said note, against the principal and sureties.
W. H. Johnson is insolvent, and if the complainants are held liable on account of said suretyship, they will be compelled to pay said note.
Under this general state of facts, the complainants filed this bill, seeking to enjoin said action at law, and to be discharged from their liability. The Chancellor refused the relief, and decreed against the complainants and the surety in the injunction bond; from which they have appealed to this Court.
This relief is sought upon two grounds: First, it is alleged, that complainants notified the defendant, about the first of the year 1864, to sue upon said note, and that they would not longer be liable on account of their suretyship; and that, in consequence of his failure to do so, they are released. This allegation in the bill is denied in the answer, and there is no proof, whatever, to sustain it. Consequently, the complainants *612 are not entitled to relief upon this ground, even if the facts alleged would entitle them to the relief sought. Second, the relief is sought upon the ground that the creditor refused to receive the money tendered him in payment of the note. This, it is insisted, and we think correctly, discharged the sureties.
A contract, by which one person becomes responsible for the debt of another, is, in its general nature, a collateral engagement for another, as distinguished from an original and direct agreement for the party’s own act, and is in the nature of an accessory to a principal obligation: Chitty on Con., 499, 528.
The contract for suretyship imports entire good faith and confidence between the parties in regard to the whole transaction. Any concealment of material facts, or any express or implied misrepresentations of such facts, or any undue advantage taken of the surety by the creditor, either by surprise or by withholding proper information, will, undoubtedly, furnish a sufficient ground to invalidate the contract; upon the same ground, the creditor is, in all subsequent transactions with the debt- or, bound to equal good faith to the surety. If he does any act injurious to the surety, or inconsistent with his rights, the surety in all such cases will be discharged; and if the creditor has any security from the debtor, and he parts with it without communication with the surety, or by his gross negligence it is lost, that will operate to discharge the surety, at least to the value of the security; and it makes no difference whether the security existed at the date of suretyship or not: See Redfield’s Ed. of Story’s Eq. Jur., vol. 1, sections *613 324, 325, and 326, and authorities cited; also, Bond et al. vs. Ray et al., 5 Hum., 492.
In the absence of any express adjudication within our knowledge, upon the precise question presented, it must be determined by general principles of equity.
We hare seen that the contract of a surety, is in the nature of a collateral engagement for another, and imports entire good faith between the parties in regard to the whole transaction. That any fraud, or imposition, upon the surety by the creditor, will invalidate the contract. That the creditor is bound to equally good faith to the surety,' in all subsequent transactions with the debtor; and if he does any act injurious to the surety, or inconsistent with his rights, the surety will be discharged.
The contract of the complainants in this case was, in its very nature, an undertaking upon their part to pay the money, in the event their principal, Johnson, failed to do so. They had no power to compel the creditor to receive the money tendered by Johnson. But, when it was tendered in payment of the debt, the creditor was bound, in good faith, and in discharge of his duties to the sureties, to have received it; and his refusal to accept a compliance with the contract, upon the part of the principal, for the performance of which only the sureties were bound, was such a fraud upon the rights of the sureties, as will, in equity, discharge them from their obligations; and, we think this would be so, upon principle, whether the principal debtor was solvent or insolvent; but more especially is it so, where he was insolvent, and that fact known to the creditor at the time.
*614 We cannot imagine how it can, in any case, he made more clearly to appear than it does in this case, that the conduct of the creditor has been injurious to the sureties, if they be held still liable upon the contract. Had he accepted the money tendered, they would have been discharged from all liability. Whilst, by his refusal, if the contract be still binding upon the sureties, they will be compelled to discharge the debt of an insolvent principal. This, it seems to us, under the circumstances of the case, would be most inequitable.
We have repeatedly holden, that the Act of Congress, declaring United States Treasury notes a legal tender in the payment of debts, was valid and binding.
The correctness of these decisions has not been questioned in argument; but it is insisted, that, inasmuch as the question had not been judicially determined in this State prior to the 14th of January, 1864, the date of the tender in this case, therefore, an offer to pay in these notes, did not constitute a valid tender. This proposition certainly cannot be maintained; so to hold, would be, in effect, to transfer the law-making power from the Legislative to the Judicial Department of the government. To hold the acts of the Legislature, State or National, are inoperative until sanctioned or promulgated by the Courts, would, in our opinion, be monstrous.
It follows, from the view we have taken of the case, the decree of the Chancellor is erroneous, and must be reversed; and a decree entered for the complainants.